Good morning, Your Honors. Kenneth M. Stern, IV Appellant. We appease the Court. This case, I think what the Court really needs to focus in are the procedures and circumstances of the identification in the first instance and not be caught up in the evidence and not regarding those procedures, etc. Because as I've indicated in my brief to the Court, determining whether there is a suggestive pretrial procedure, one must just first focus on that procedure. Counsel, this is 2254, right? Yes, it is, Your Honor. And the issue is ineffective assistance, right? Yes. Now, under Knowles v. Merzias, this recent Supreme Court decision, the nothing-to-lose rule that we used to have, well, the lawyer would have had nothing to lose, so should have filed the motion. That's dead. Is that right? Well, I did file a 28-J letter on that issue, Your Honor. And there's a difference between that case and what is being argued in this case. Do you think the nothing-to-lose rule survives for some purposes? Not that broadly. No, not that broadly. In the Knowles case, it talked about that rule as being a standard of review. I'm not contending that that is a standard of review in this case. And in Knowles, there's an important distinction between Knowles and this case. In Knowles, there was no arguably meritorious position that trial counsel could have taken to have brought the motion, and that was determined by the appellate courts. Let me push forward a little to what I'm trying to get at here. What it looks to me like is Pelch had a novel and weak motion to suppress. His lawyer didn't make it, it being both novel and weak, didn't see much point. And that's really all you've got is ineffective assistance for failing to make a motion to suppress identification evidence. Well, I would disagree, Your Honor. I don't think it was novel and I don't think it was weak. And in terms of the Knowles case, what I'm saying is that the fact that there was nothing to lose, it's not a standard, but it is a factor to be determined whether or not there was ineffective assistance as counsel. What is – sorry, go ahead. Is there any ineffective assistance claim except failure to move to suppress identification evidence? No, Your Honor. And which identification evidence would have been suppressed, in your view, had the lawyer moved to suppress it? That would have been the identifications of witnesses Tina Haddad, Nikki DeMossonis, Irene DeMossonis, Michael. Would it be just the in-court identifications or would it be everything they had to say about identification? It would have been both the in-court identifications and the line-up identifications. Even if there were some suggestiveness in the process, what difference did it make? Because essentially all of them really identified him based upon voice and gait, to a certain extent, filled, none of which was revealed in either the Wanted poster or America's Most Wanted program. Well, I think that they knew going in that Mr. Pelch was the person claimed by the FBI to have been – committed the crime. They – Well, sure, but they didn't know who Mr. Pelch was unless they knew that person was he. Well, they knew it from – they knew it from the Wanted posters. They knew it from America's Most Wanted. They knew it from the FBI. They knew it from the FBI being – telling them, we want you to come down. Mr. Pelch is going to be in these line-ups and we want you to identify him. That's the overlay of what their mindset is coming down to identify him. And now, how did they identify him? They identify him on these very – I would call them vague, forethought – Well, when I say – well, when I say vague, what I mean is these are the kind of identifying factors which are very, very hard to put a lot of credibility on. I understand. When I call my office – actually, I'm in the habit of never saying who I am when I call my office. And my law clerks and secretaries know my voice. But, Your Honor, you're – My stockbroker knows my voice. Everybody I call with more than a couple times a year knows my voice. But they hear your voice on a continuing basis. These witnesses saw my client's bill, heard his voice. They heard his voice. It was both in a whole lot more interesting circumstance and vastly more often than my stockbroker or my car insurance salesman or other people that I call maybe between once and five times a year. But they hear you over the years on a continuing basis. They build up a recognition. Whereas these people heard my client's voice maybe a few times in a very finite time period years before. In fact, I can tell you an experience. I have a friend who has a voice very similar to mine. And I called him up once at work, and his secretary thought that I was him playing a joke on her. So I think voice is a very nebulous, hard, hard identifying factor to put a lot of credibility on. Let me ask you this. You have to show that if the motion had been made, it probably would have been granted. Yes. And then even then, if the judge should have granted it but didn't, you still have to show that he was prejudiced by making the mistake of not granting it. Right. That's where I'm hung up. It looks like there's an awful lot of evidence. First of all, it's doubtful. Let's assume for the sake of discussion he should have granted this motion. But if he didn't, it seems like there's also an awful lot of other evidence that would make this error harmless. Well, there is a lot of evidence. But if you look at it, a lot of that evidence is not credible, number one. Or there's an eyewitness who was not tainted by any identification. What is it, the Duranzo-Torres people? Miss Torres. But she also admitted that she lied to the FBI about something. Well, you had Towers testifying that put Pelch squarely in the middle of this. And he's an accomplice, and he's admitted he's lied on other matters. And the spending spree. And the Coastal Bank robbery. In the fleet. Which had the same footprints. This could all be evidence of a different crime, a crime of accessory after the fact. It could be he was given money to help cover up the crime after the fact. And maybe he could have been properly convicted on that. But we don't, you know, that kind of evidence that we see, the spending spree and the flight, can all be evidence of a crime for which he was convicted, could have committed other than for which he has been committed. So while it does appear that there's all of this evidence, we don't know that that is evidence of the crime he was convicted. And if those highly suggested identifications were not allowed in, the district attorney certainly could have tried him as an accessory of the fact and used that evidence that he did commit a crime and did receive some fruits of the crime, but not necessarily the crime for which he was charged. I would like to, unless the Court has any more questions, reserve my last minute and a half. Surely. Thank you. Good morning, Your Honors. May it please the Court, California Deputy Attorney General Gary Lieberman for Respondent, FLE. What I'm going to present to the Court is probably highly irregular. But yesterday I decided to go down and look at the exhibits in this case. I thought before oral argument I should at least know what the wanted posters look like and possibly be able to see the America's Most Wanted video. The exhibits room, I wasn't able to see the video, but I was able to see the wanted posters. And one thing that I wasn't aware of was that there were two wanted posters, and one of them not only showed Mr. Pelch's face, but also his body. There was a full photo of his body, and I have that here. Now, as I'll argue, I don't think that makes a difference, but I believe that the district court was under the impression that none of the characteristics that were used to identify Mr. Pelch at the lineup could have been gleaned from the photographs. So I was surprised, and it just dawned on me last night when I was thinking more about it, that that representation, and of course I heralded that representation in my pleading, might possibly be inaccurate. It's unclear, based on my knowledge of the record, whether the victims actually saw this particular wanted poster or just the one with the face. It's also unclear, because I haven't seen the America's Most Wanted video, whether only face shots were on the video or whether the full body shot. But I wanted, out of my duty of candor to the court, and I brought this to opposing counsel's attention this morning, I just made copies of it at home last night, that that might be an inaccuracy in the pleadings. But again, I don't think that would matter in this case. And why not? Because of the other indicia of reliability, going through the Neal versus Biggers factors, the opportunity to view, there was significant opportunity to view. This was an overnight ordeal. Mr. Pelch moved the victims, bound the victims, threatened the victims. And so the victims had an awful lot of exposure to him and also a huge motivation to pay close attention, given that they were the victims of these crimes. And as Judge Kleinfeld mentioned about the voice, that that is a compelling identification feature. Certainly that remains the same, regardless of the pictures. The eyewitnesses wouldn't have known from the America's Most Wanted video or program or the Wanted posters what Mr. Pelch's voice was. And I thought it was very compelling, the reason why some of these witnesses remembered Mr. Pelch's voice. And Irene DeMoclinis, which is one of the victim eyewitnesses, and this is set forth in the appellee's brief, but it was compelling to me. She explained that throughout the night, all I can remember is him threatening us, so that's been stuck in my head ever since. And so I think that's a compelling reason why this particular witness would be able to identify Mr. Pelch's voice. And Michael DeMoclinis, the father, he also, he identified Mr. Pelch based on his date, which, of course, can't be told by, you know, a still photograph, and also based on his voice. And when Michael DeMoclinis heard the voice, he was 100 percent certain that this was the man. And, of course, certainty is one of the factors to be considered in determining whether an identification is nevertheless reliable, notwithstanding any possible suggestiveness. And Michael DeMoclinis said, I'm paraphrasing a little bit, that's the voice that was in my ear all night that night, you know, do that, do that. I'm going to put a bullet in your head. When you hear those words all night, it stays right there. So I think that's a compelling identification. And now, as far as the line-up itself, there's no claim that the line-up itself, there was any suggestiveness as to the line-up procedure itself. And I think that going through the reliability factors, I think this, you know, the district court did have it right that the state trial court almost would have certainly denied a motion to suppress and let the jury determine the persuasiveness, you know, of these identifications. I think that the, you know, the words of the United States Supreme Court in Nansen v. Braithwaite are particularly appropriate here, that juries are not so susceptible that they can't measure intelligently an eyewitness identification that has some questionable features. And here, that's the case, and it was appropriate for the jury to make that identification, excuse me, to make that determination. And it's also, I think, significant that we have an attorney here who didn't drop the ball on the questionable features of the ID. You know, the defense counsel used this as a basis for cross-examination at trial, went so far as to call an eyewitness identification expert. So this attorney was well aware of the issue, and it was a focus of the defense. And I think it was within the wide range of professionally competent assistance for, in this case, for defense counsel, you know, not to make what Judge Kleinfeld, I think, appropriately referred to as a novel and weak motion to suppress. And also thinking further about the case since I briefed it, I was thinking whether, you know, there may also have been a strategic reason not to bring this motion. Although the nothing-to-lose standard, I agree, that no longer exists. But in addition, I think that here there actually was something possible to lose by bringing a doubtful motion to suppress, and that is foreshadowing for the prosecutor and these, you know, eyewitnesses, the cross-examination that the defense counsel would make at trial. Because this motion to suppress was, you know, doubtful at best, and had a motion to suppress been made, the trial court would have held a hearing, a California Evidence Code 402 hearing, to hear what the witnesses' reasons were for their identifications. So, you know, basically, defense counsel would have advertised her cross-examination and defense, you know, in the course of making what probably would have been. Could you tell me what a 402 hearing is? I think what you're saying is that the witnesses would have gotten one free opportunity to deal with the cross before they had the one that mattered in front of the jury, assuming the motion to suppress lost. But I don't know what a 402 is. Your Honor, a California Evidence Code 402 hearing is a preliminary fact hearing. It's to determine a preliminary fact before evidence is submitted. Is this what we called in Alaska an evidentiary hearing on a motion to suppress? It would be the equivalent of that. So there would be an evidentiary hearing on the motion to suppress, and the witnesses would then testify subject to cross? Correct, Your Honor. Or else be called by the defense to see if the defense could impeach their identifications? Correct, to see what it basically to examine these witnesses as to what they saw. The jury would not hear that? The jury would not hear that. And that would find out whether the wanted posters in the television show were too much a part of their identification and whether their actual certainty without that was too weak? Exactly. That that would have been determined at such a hearing. And, in fact, in the district court's decision, the court mentioned that as well and cited a California Supreme Court case in which basically exactly that was done. Did defense counsel here submit a declaration explaining that was his reason for not bringing the motion? No, Your Honor. As far as I'm concerned. This is just your kind of theory? Yes, sir. Okay. And also I would also echo, I believe. So at the end of the hearing, if the motion to suppress was denied, that would mean that the jury never heard it, but the witnesses have all heard all the questions, so now they get to prepare with the prosecutor for when they testify about the same things in front of the jury? Correct, Your Honor. And the prosecutor would be educated as well as to the specifics of the defense. And in closing, in my last eight seconds, I would just echo, I believe it was Judge Silverman who said, talked about a lot of, that there was a lot of evidence that would make any error harmless. And in this case, this guy is, to avoid being too cloak wheel, guilty as sin. Thank you so much, Your Honors. Thank you, Judge Silverman. Mr. Stern. Thank you, Your Honors. I'm not going to try and repeat what I've put in pages 35 through approximately 60 of my opening brief and carefully analyzing these witnesses' testimony as to why they identified my client and analyzing the factors for suggestive identification in relation to that. But if you look at that, Your Honors, we'll see that their identifications were not nearly as strong and conclusive as one might think in just thinking about it generally. For example, there was one witness who, she testified at one point, she identified my client because of his eyes based on certain factors of the eyes. But then at a different time, she testified also to the eyes, but it was something completely different. But the jury heard that and was able to take that into account, right? Yes. What I think needs to be done here, Your Honors, is at minimum, I think my client is entitled to an evidentiary hearing in the district court, which she never got, let the district court judge look at the wanted posters, let the judge look at the tape, take testimony from trial counsel, et cetera. And with that, I would submit, Your Honors. All right. Thank you, Mr. Stern. The matter just argued will be submitted. And you'll next hear Ms. Waters, City of Carlsbad.
judges: Rymer, Kleinfeld, Silverman